PEOPLE v MELVIN DAVIS

Docket No. 79982. Submitted June 10, 1985, at Detroit.—Decided October 21, 1985.

Melvin T. Davis was convicted of bank robbery in the Recorder's Court of Detroit and was sentenced, M. John Shamo, J. Defendant appealed. *Held:*

1. The police had probable cause to arrest defendant without a warrant.

2. Defendant's fiancee consented to allow the police to enter her home without a warrant to arrest the defendant. The arrest of the defendant in the house he shared with his fiancee was constitutionally valid even without a warrant in light of the fiancee's consent to the officers' entry into the house.

3. It was not unlawful for the police to conduct a photographic identification display while defendant was in custody. Defendant's conduct made it impossible to conduct a proper lineup.

4. The photographic identification by a witness did not impermissibly taint a subsequent lineup identification or in-court identification of the defendant by the witness.

5. Defendant was denied neither due process nor the effective assistance of counsel by defense counsel's failure to move to suppress the identification evidence.

6. The trial court's findings of fact complied with the court rules and, while the court did not specifically set forth the findings on each element of the crime, its opinion manifests a finding that defendant did commit the crime of which he was convicted. Remand for additional fact-finding is not necessary.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1-4] Am Jur 2d, Arrest §§ 22 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Arrest.

[5, 6] Am Jur 2d, Criminal Law §§ 952 *et seq.*

Admissibility, and prejudicial effect of admission, of "mug shot," "rogues' gallery" photograph or photograph taken in prison, of defendant in criminal trial. 30 ALR3d 908.

[7-10] Am Jur 2d, Trial §§ 1250 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Trial by Court.

1. ARREST — WARRANTLESS ARREST — FELONIES.

   A police officer may make an arrest without a warrant when a felony in fact has been committed and the police officer has reasonable cause to believe that the person has committed it (MCL 764.15[1][c]; MSA 28.874[1][c]).

2. ARREST — PROBABLE CAUSE.

   Probable cause is the single basis for making an arrest without a warrant and is a fundamental requirement for obtaining an arrest warrant (US Const, Am IV; Cont 1963, art 1, § 11; MCL 764.15; MSA 28.874).

3. ARREST — PROBABLE CAUSE.

   A court reviews a police officer's determination that probable cause to arrest a suspect existed by asking whether, under the facts available to the officer at the moment of arrest, a man of reasonable prudence and caution would determine that the person arrested had committed a felony.

4. ARREST — WARRANTLESS ARREST — POLICE ENTRY INTO SUSPECT'S HOME — CONSENT — THIRD PARTIES.

   A third party with a right of possession or control of the premises equal to that of a suspect can give valid consent to police to enter the premises for the purpose of arresting the suspect.

5. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHS.

   Photographic identification of a suspect should not be used where the suspect is in custody unless (1) it is not possible to arrange a proper lineup; (2) there is an insufficient number of persons available with the suspect's physical characteristics; (3) the nature of the case requires immediate identification; (4) the witnesses are at a place far distant from the location of the in-custody suspect; or (5) the suspect refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.

6. CRIMINAL LAW — IDENTIFICATION.

   The fairness of an identification procedure is evaluated in light of the totality of the circumstances and the test is not whether the procedure was suggestive but rather whether the totality of the circumstances shows it to be reliable.

7. CRIMINAL LAW — BENCH TRIALS — FINDINGS OF FACT.

   In criminal cases as well as civil cases a judge who sits without a jury is obligated to articulate the reasons for his decision in findings of fact; the purpose of the findings of fact is to reveal the law applied by the fact finder.

8. APPEAL — FINDINGS OF FACT — REMEDIES.

The appropriate remedy for insufficient findings of fact generally is a remand for additional fact-finding but a judge's failure to find the facts does not require remand where it is manifest that he was aware of the factual issue, that he resolved it and it would not facilitate appellate review to require further explication of the path he followed in reaching the result.

9. APPEAL — FINDINGS OF FACT — SUFFICIENCY OF FINDINGS.

A trial court's findings of fact cannot be judged sufficient or insufficient on their face; they must be judged in the context of specific legal and factual issues raised by the parties and the evidence.

10. CRIMINAL LAW — BENCH TRIALS — FINDINGS OF FACT — APPEAL.

A trial court in a criminal case in which the defendant is convicted in a bench trial should state that it has found each element of that crime of which the defendant was convicted, but remand for additional fact-finding may not be necessary on appeal where the trial court makes general findings for all the charges and the court's opinion clearly manifests a finding that the defendant committed the crime of which he was convicted.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timonthy A. Baughman*, Deputy Chief, Civil and Appeals, and *Brian Marzec*, Assistant Prosecuting Attorney, for the people.

*Jesse W. Reed, Jr.*, for defendant on appeal.

Before: DANHOF, C.J., and R. B. BURNS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant, Melvin Tim Davis, was charged with bank robbery, MCL 750.531; MSA 28.799. After the waiver of a jury trial in Detroit Recorder's Court, defendant was found guilty as charged by the court on April 24, 1984. On May 4, 1984, defendant was sentenced to prison for a period of not less than six nor more than ten years. Defendant brings this appeal as of right.

The defendant's conviction stemmed from the September 17, 1983, robbery of the Comerica Bank located on East Eight Mile Road in Detroit. Velma Kidd, a teller at the bank, testified as follows. At approximately 1:40 p.m., a white male with a blondish gray moustache, who wore a black jacket and a black motorcycle helmet, approached Kidd's window. The subject put a blue nylon bag under the window. That was followed by a note that said, "this is a hold up, put money in the bag, don't move and don't push the button. Have gun, don't make a move." When Kidd looked at the teller next to her to try and catch her eye, the subject told Kidd not to look at her. Kidd took all the money from her working drawer, approximately $492, put it in the bag and slid it back under the window. The money included bait money, *i.e.,* bills of which the serial numbers had been prerecorded. The subject took the bag and left the bank.

Sergeant Dennis Richardson of the Detroit Police Department's Armed Robbery Unit testified that on December 16, 1984, he received information from the 911 section that an anonymous caller had provided information that the white male who had robbed the bank on Eight Mile was a parolee named Melvin Davis who was staying on Waldo off of Martin. Richardson already knew about Davis and he obtained a photograph of Davis to compare it with witness descriptions of the perpetrator and bank surveillance photographs. After making the comparison, Richardson believed that Davis was responsible for the bank robbery. On December 17, 1983, Richardson and Sergeant Presley went to 6856 Waldo to confirm that it was the residence of Rose Humfleet, the residence where the defendant was staying, and to get a telephone number to that residence. Richardson confirmed that Humfleet

lived in the single-family house located at the Waldo address.

On December 20, 1983, Richardson, Presley, three other Detroit police officers and three FBI agents went to Humfleet's residence to effect the arrest of the defendant. At the time, the officers did not have an arrest warrant for Davis. Sergeant Presley knocked on the door and Humfleet answered. Presley identified the group as police officers and FBI agents. Humfleet then opened the door and admitted them to the premises. Richardson told Humfleet that they were from the Armed Robbery Unit and that they were there to arrest Melvin Davis in connection with a bank robbery. Humfleet told the officers that Davis was located in a back bedroom. The officers went to the rear of the dwelling, located Davis, and placed him under arrest. While the officers were waiting for Davis to get dressed in the bedroom, Sergeant Presley observed a gun which was seized and placed into evidence.

Due to an inability (beyond the officers' control) to conduct an initial live lineup, a photographic display was shown to Kidd. Kidd picked out the defendant's photograph. However, she stated that she would have to see the man (in full view) to know if it was the right person. Richardson was able to arrange a live lineup the following day. Kidd viewed the live lineup and picked out the defendant, identifying him as the perpetrator.

Defendant presented two alibi witnesses, Rose Humfleet, his fiancee, and Randy Grice. They both testified that they were with the defendant all day on September 7, 1983, at Humfleet's residence. They claimed that defendant never left the house.

The trial judge stated in his findings of fact that he did not entirely believe the alibi witnesses' testimony, and that there was no doubt in his

mind that the defendant was the person who entered the bank on September 7, 1983, gave the note to the teller, and took the money.

The defendant's first claim is that the police did not have probable cause to arrest him.

In Michigan, a police officer may make an arrest without a warrant "[w]hen a felony in fact has been committed and the peace officer has reasonable cause to believe that the person has committed it". MCL 764.15(1)(c); MSA 28.874(1)(c). See also *People v Casey,* 102 Mich App 595; 302 NW2d 248 (1980), *aff'd on other grounds* 411 Mich 179; 305 NW2d 247 (1981).

"Probable cause is the single basis for arrest without a warrant and a fundamental requirement for obtaining an arrest warrant. The probable cause requirement has deep and fundamental roots in Anglo-American law and in the fundamental law of this country. US Const Am IV; Const 1963, art 1, § 11." *People v Hamoud,* 112 Mich App 348, 351; 315 NW2d 866 (1981), *lv den* 414 Mich 959 (1982).

The standard for reviewing a police officer's determination of probable cause to arrest is described in *People v Mitchell,* 138 Mich App 163, 167; 360 NW2d 158 (1984):

"A court reviews the officer's determination of probable cause by asking whether a man of reasonable prudence and caution (not a legal scholar) would determine whether the person arrested had committed a felony. *People v Harper,* 365 Mich 494, 501; 113 NW2d 808 (1962). The reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. *People v Oliver,* 417 Mich 366, 374; 338 NW2d 167 (1983). A reviewing court will not isolate facts or beliefs from their surrounding circumstances in

determining the existence of probable cause. *Harper, supra,* p 500."

In the instant case, approximately three months after the robbery occurred, the Detroit Police Department, through one of its 911 operators, received the anonymous tip that Melvin Davis was responsible for the robbery. The call was tape recorded. Sergeant Richardson listened to the tape several times. Although Richardson already knew about Davis, he still checked through police identification records. Richardson also knew that the robbery had been committed by a white male. Richardson then obtained a picture of defendant and compared it with the information obtained in bank interviews after the crime. After comparing the defendant's picture with the description obtained from the bank witnesses, Richardson believed that the defendant was responsible for the robbery. Surveillance photographs taken during the robbery were then viewed by Richardson. Richardson found similarities between the surveillance photographs and the depiction of defendant in his photograph.

The defendant's argument is that, based on the anonymous tip, the police did not have sufficient information from which they could conclude that defendant robbed the bank and that the tip was insufficiently corroborated by independent sources.

We point out that immediately after the robbery, the police were given a detailed description of the perpetrator from the teller who was robbed. Bank surveillance photographs of the perpetrator had been taken at the time of the robbery. The police did not arrest the defendant on the basis of the informant's tip. Rather, once the police were given the defendant's name, as a lead, the police conducted an independent investigation. It was

only after the defendant's photograph was obtained, compared to the teller's description, and then compared to the bank photographs, that the police concluded that the defendant perpetrated the crime. The police had probable cause to arrest the defendant. While the police did not have probable cause to arrest based solely on the tip, see *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977), probable cause here was established by independent investigation and not, at all, by the tip.

Defendant's next claim is that his arrest without a warrant was unconstitutional. We disagree.

In *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the United States Supreme Court held that an entry without a warrant into a suspect's home for the purpose of placing him under arrest is unconstitutional absent consent or exigent circumstances. Here, the officers had the consent of Rose Humfleet, defendant's financee, to enter the dwelling where the defendant resided with her. The precise issue here is whether Humfleet had the authority to give the officers consent to enter the dwelling for the purpose of arresting the defendant. *Payton* did not answer the question of who is authorized to give consent under the circumstances of this case.

In *People v Oliver,* 417 Mich 366; 338 NW2d 167 (1983), *reh den* 418 Mich 1201 (1984), our Supreme Court acknowledged the propriety of the *Payton* holding that in the absence of consent or exigent circumstances, the Fourth Amendment prohibits entries without warrants into private homes to make routine felony arrests.

We agree with the prosecutor that Humfleet's consent was sufficient to authorize the police officers to enter her home to arrest the defendant. Humfleet testified that she had known the defen-

dant for two years and three months and had lived with him for that length of time. Although there are no Michigan cases addressing the issue of third-party consent to enter a suspect's home for an arrest without a warrant, Michigan's approach to third-party consent to a search for evidence can be applied to this case. In *People v Barbat,* 49 Mich App 519; 212 NW2d 318 (1973), *lv den* 391 Mich 795 (1974), this Court held that although a consent to search must ordinarily be given by the party affected, the exception to this rule is where a third party consents and the consenting party's equal right of possession or control of the premises is shown. *Id.,* 529. See also *People v Wagner,* 104 Mich App 169, 176; 304 NW2d 517 (1981), citing as authority *United States v Matlock,* 415 US 164; 94 S Ct 988; 39 L Ed 2d 242 (1974), a case in which third-party consent for the search without a warrant of a bedroom was given by the accused's mistress who shared the room with him. The *Matlock* Court stated:

" '[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' " (Footnote omitted.) 415 US 171.

We find that the consent to search cases are persuasive. The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the seizure of evidence as well as persons. *Payton, supra.* It is clear from the record that Humfleet and the defendant were living together in Humfleet's home at the time she gave the police consent to enter the dwelling. There is no problem

in regard to mutual access or control of the premises. Moreover, it also appears from the record that Humfleet's consent was voluntarily given. There is absolutely no evidence indicating that the officers either forced their way into the home or coerced Humfleet into giving them consent to enter. Therefore, in our opinion, the arrest without a warrant of the defendant in his home was constitutionally valid in light of Humfleet's consent to the officers' entry of the premises. *Payton, supra; Oliver, supra.*

Defendant's third argument is that it was unlawful for the police to conduct a photographic display while the defendant was in custody.

In *People v Anderson,* 389 Mich 155, 186-187, fn 22; 205 NW2d 461 (1973), the Supreme Court held that a photographic lineup should not be used when the accused is in custody subject to the following exceptions:

"1. It is not possible to arrange a proper lineup.

"2. There are *[sic]* insufficient number of persons available with defendant's physical characteristics.

"3. The nature of the case requires *immediate* identification.

"4. The witnesses are at a place far distant from the location of the in-custody accused.

"5. The subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification." (Emphasis in original.)

In the instant case, the defendant was clearly in custody at the time of the photographic identification. Velma Kidd picked the defendant's picture out of a photographic array, but she indicated that she would have to actually see the defendant to be sure of her identification. The defendant now argues for the first time on appeal that Kidd's subsequent corporeal identifications were tainted by the

impermissible photographic identification and the identifications should have been suppressed unless they had a basis independent of the photographic identification.

Defense counsel did not challenge the pretrial identification procedures below. Where issues with identification procedures are not raised at trial, this Court will not review the matter unless a refusal to do so would result in manifest injustice. *People v Leach,* 114 Mich App 732; 319 NW2d 652 (1982). The *Leach* Court concluded that manifest injustice would not result from a refusal to review an issue concerning a photographic identification because identification was not a contested issue at trial. However, here identification was really the only issue. Therefore, appellate review is not foreclosed. Moreover, the prosecutor does not argue that appellate review is precluded.

We hold that the fifth exception noted in *Anderson, supra,* serves to justify use of the photographic identification procedure that was employed here.

Sergeant Richardson tried to arrange an initial live lineup. It was difficult to do so because there were not enough white males available at the time. After Richardson found five cooperative white prisoners to participate in the lineup, the defendant asked them not to stand in the lineup and they obliged him by refusing to do so. Therefore, Richardson was unable to conduct the lineup and the photographic array was shown to Kidd.

It was not possible to arrange a proper lineup because of the defendant's own actions. There is no authority that requires the police to make endless efforts to attempt to arrange a lineup. Here, the police made a substantial effort to conduct a proper lineup but their efforts were thwarted by the defendant. Therefore, the photo-

graphic identification procedure employed here was proper. *Anderson, supra.*

Notwithstanding the propriety of the photographic identification procedure, a question still remains as to whether the lineup identification of the defendant by Velma Kidd on the following day was impermissibly tained by the photographic identification. The fairness of an identification procedure is evaluated in light of the totality of the circumstances. *People v Petrella,* 124 Mich App 745; 336 NW2d 761 (1983), *lv gtd on other grounds* 419 Mich 922 (1984). The test is not whether the procedure was suggestive but rather whether the totality of the circumstances shows it to be reliable. *Id.,* 755-756.

In our opinion, choosing the defendant's picture out of a photographic array did not affect the reliability of Kidd's identification of defendant at the live lineup on the following day. Sergeant Richardson did not tell Kidd that the man she picked out of the photograph would be in the subsequent live lineup. He also did not tell Kidd that defendant was suspected of committing the crime. Furthermore, it was logical for the live lineup to be conducted after Kidd indicated that she would have to actually see the person in order to be sure of her photographic identification. We find no error in either identification procedure. *Anderson, supra; Petrella, supra.*

We find no merit to defendant's claim that the in-court identification was impermissibly tainted by Kidd's prior identifications of defendant. There was nothing improper about the pretrial identification procedures. We have also examined defendant's claims of counsel's alleged mistakes and/or omissions under both *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977), and *Strickland v Washington,* — US —; 104

S Ct 2052; 80 L Ed 2d 674 (1984). See also *People v Vicuna,* 141 Mich App 486; 367 NW2d 887 (1985). We find that defendant was denied neither due process nor the effective assistance of counsel.

Finally, defendant argues that the trial court's findings of fact were insufficient.

In *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973), our Supreme Court held that in criminal as well as civil cases, a judge who sits without a jury is obligated to articulate the reasons for his decision in findings of fact. The purpose of the findings of fact is to reveal the law applied by the fact finder. *Id.,* 627. The appropriate remedy for insufficient findings of fact is a remand for additional fact-finding. *Id.,* 628. However, a judge's failure to find the facts does not require remand where it is manifest that he is aware of the factual issue, that he resolved it, and it would not facilitate appellate review to require further explication of the path he followed in reaching the result. *Id.,* 627, fn 3. GCR 1963 517.1 (MCR 2.517[A]; MCR 2.613[C]) pertaining to findings by the court provides in pertinent part as follows:

"1. Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the fact specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts. If an opinion or memorandum decision is filed, it will be sufficient if the findings and conclusions appear therein."

A finding of fact cannot be judged sufficient or insufficient on its face alone. On review, the court's findings are examined in the context of the specific legal and factual issues raised by the par-

ties and the evidence. *People v Cook,* 89 Mich App 72, 80; 279 NW2d 579 (1979), *lv den* 406 Mich 1002 (1979). Here, there were only two issues to be resolved by the trial court: (1) the credibility of the witnesses and (2) the identification of the defendant as the perpetrator of the bank robbery.

It is clearly apparent that the trial judge resolved the credibility issues in favor of the prosecution witnesses and that the judge found the testimony of the alibi witnesses not believable. The court also clearly found the defendant responsible for the bank robbery. The findings of fact complied with GCR 1963, 517.1.

However, defendant also argues that the court's findings were insufficient because the court did not specifically set forth the findings on the elements of the crime.

"In *People v Davis,* 126 Mich App 66; 337 NW2d 315 (1983), this Court stated that a trial court must make specific findings of fact on each element of a crime. However, another panel of this Court held that *Davis* misinterpreted *Jackson. People v Taylor,* 133 Mich App 762, 766; 350 NW2d 318 (1984), *lv gtd* 419 Mich 879 (1984). The *Taylor* panel interpreted *Jackson* to mean only that 'a trial court's findings [are] insufficient if they created doubt as to whether the trial court correctly applied the law to the facts' ". *People v Robinson,* 145 Mich App 562, 565; 378 NW2d 551 (1985).

The *Taylor* Court held that it was not necessary to remand the matter for additional fact-finding when the trial court made general findings for all the charges and the trial court's opinion clearly manifested a finding that defendant knowingly possessed a firearem during the commission of a felony even though the court did not specifically state such.

Although the trial court here did not make

specific findings as to each element of the offense, under *Taylor, supra,* a remand is unnecessary. The trial court's opinion manifests a finding that the defendant put the bank teller in fear for the purpose of stealing money from the bank.

Affirmed. We retain no further jurisdiction.