PEOPLE v RUSHLOW

Docket No. 102130. Submitted February 13, 1989, at Detroit. Decided August 8, 1989.

John Rushlow was convicted following a bench trial in the Recorder's Court for the City of Detroit of second-degree murder. The trial court, James E. Roberts, J., sentenced defendant to from 75 to 150 years imprisonment. Defendant appealed.

The Court of Appeals *held:*

1. Any error in the admission of certain testimony of a witness concerning an incident between the defendant and the witness which occurred three days before the killing was, under the facts, harmless error.

2. The trial court properly determined that testimony by that same witness that the defendant had threatened to kill the witness forty-five minutes before the murder was relevant.

3. The trial court's findings were sufficient to support a conviction for second-degree murder.

4. The appropriate determination of the maximum permissible sentence under the doctrine of *People v Moore,* 432 Mich 311 (1989), is whether the defendant can reasonably be expected to serve the minimum sentence less disciplinary credits. It is reasonably possible for the defendant here to serve his minimum sentence less disciplinary credits and the sentence is thus valid under the *Moore* doctrine.

5. The sentence does not shock the judicial conscience of the Court of Appeals.

Affirmed.

MAHER, J., concurred in part and dissented in part. While concurring in the majority's affirmance of defendant's conviction, and writing separately to express his belief that the applicable standard as to the degree of specificity required of the trial court's factual findings is that set forth in *People v Taylor,* 133 Mich App 762, 766 (1984), he dissented from the

REFERENCES

Am Jur 2d, Criminal Law §§ 535, 542, 715; Trial §§ 1238 *et seq.;* Witnesses §§ 434-437.

See the Index to Annotations under Appeal and Error; Indeterminate Sentence; Mistrial; Trial By Court; Witnesses.

determination that disciplinary credits may be considered in determining whether it is reasonably possible for a defendant to actually serve his minimum sentence. He would vacate and remand for resentencing.

1. TRIAL — WITNESSES — MISTRIAL.

An unresponsive, volunteered answer by a witness generally is not cause for the granting of a mistrial.

2. TRIAL — APPEAL — BENCH TRIALS.

Matters which constitute error requiring reversal when a case is tried before a jury do not necessarily require reversal when they occur in a bench trial.

3. EVIDENCE — PRIOR BAD ACTS — PRIOR STATEMENTS.

A prior statement does not constitute a prior bad act for purposes of the application of the rule pertaining to evidence of prior bad acts (MRE 404[b]).

4. APPEAL — BENCH TRIALS — CRIMINAL LAW — FINDINGS OF FACT.

A trial judge's findings of fact in a criminal bench trial satisfy the requirement of the court rule regarding the specificity required of the trial judge's factual findings where it is manifest from those findings that the trial court was aware of the factual issues and correctly applied the law and where appellate review would not be facilitated by requiring further explanation (MCR 2.517[A][1]).

5. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES.

A sentence imposed for a term of years must be an indeterminate sentence less than life that is reasonably possible for a defendant to serve; the determination of the maximum permissible sentence is to be made by deciding whether the defendant can be reasonably expected to serve the minimum sentence less disciplinary credits.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Craig A. Daly,* for defendant.

Before: SAWYER, P.J., and MAHER and BRENNAN, JJ.

Sawyer, P.J. Defendant was convicted, following a bench trial, of murder in the second degree. MCL 750.317; MSA 28.549. He was thereafter sentenced to serve a term of 75 to 150 years in prison. He now appeals and we affirm.

Defendant's conviction arises out of the killing of Kathleen Kingsbury, a topless dancer at Legs Lounge. On the day in question, Kingsbury was working and defendant was a patron at the bar. The killing occurred in what was referred to as the "record room" in which a buffet had been set up for the patrons. The record room was separated from the other areas of the bar by a wall and a curtain. A number of people in the establishment heard a scream and a thud, followed by defendant running out of the record room. Some witnesses had seen the victim performing an oral sex act on defendant shortly before the killing and at least one witness saw defendant drop a knife from his hand. Another witness entered the record room after hearing a scream or scuffle in the record room and saw defendant with a knife, stabbing the victim with an upward swing and striking her in the sternum area. According to the autopsy report, the victim had several stab wounds to the chest which penetrated the heart as well as a wound to the left thigh and a wound to the right lower leg. The stab wounds to the heart with the subsequent bleeding were listed as the cause of death. According to the medical examiner, the deceased would have lived seconds to minutes at the most.

Defendant first argues that the trial court committed error requiring reversal by admitting the testimony of another dancer in the bar, Stephanie Kinzel, concerning two prior incidents between defendant and Kinzel at the Legs Lounge. Specifically, Kinzel testified that she had encountered defendant in the bar three days before the stab-

bing when he assaulted her and threw her across three tables. Second, Kinzel testified that on the night of the stabbing she had a conversation with defendant approximately forty-five minutes before the killing wherein defendant told Kinzel that if she did not go home with him he would wait there and kill her.

With respect to the first statement, concerning the incident three days prior to the killing, it appears that Kinzel's statement came in the form of an unresponsive answer with Kinzel volunteering the information on the prior incident. Specifically, the prosecutor had inquired when Kinzel had seen defendant prior to the night of the killing and she responded that it had been three days before when he was in there and he threw her across three tables. First, we note that, while defendant objected to this testimony on the basis of relevancy, defendant requested no specific curative action by the trial court, such as requesting a mistrial. Moreover, as a general rule, an unresponsive, volunteered answer is not cause for granting a mistrial. *People v Lumsden,* 168 Mich App 286, 299; 423 NW2d 645 (1988). Additionally, the prosecutor voluntarily abandoned any further inquiry into the prior incident. Finally, we note that matters which constitute error requiring reversal when a case is tried before a jury do not necessarily require reversal when they occur in a bench trial. *People v Jones,* 168 Mich App 191, 194; 423 NW2d 614 (1988). Accordingly, in light of the fact that this was a relatively brief comment made as an unresponsive answer by a witness, that no specific curative action was requested by defendant at trial, and that this was a bench trial rather than a jury trial, we conclude that any error in admitting that testimony does not require reversal in the context of this case.

Defendant also complains that the trial court erroneously admitted Kinzel's testimony that defendant had threatened to kill her forty-five minutes before the stabbing. We disagree. As the Supreme Court recently noted, a prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act. *People v Goddard,* 429 Mich 505, 518; 418 NW2d 881 (1988). See also the concurring opinion of Chief Justice Riley in *Goddard.* Rather, the relevant inquiry is whether the admitted statement is relevant. *Goddard, supra* at 518.[1]

Turning to the issue of relevancy, we believe that defendant's threat to Kinzel forty-five minutes before the stabbing was relevant. Specifically, it showed defendant's state of mind or predisposition to commit the crime. Specifically, defendant's statements to Kinzel tended to establish that he was in a state of mind whereby he was willing to kill if denied sexual favors. Forty-five minutes later, defendant killed another dancer at the club, apparently after receiving a sexual favor. We believe this evidence was relevant to an element of the offense, specifically malice or defendant's intent in committing the stabbing, and directly tended to disprove his defense theories of self-defense or accident.

For the above reasons, we conclude that there was no error requiring reversal in the trial court's admission of the complained-of statements.

---

[1] We also note that defendant refers in his brief to the similar acts statute, MCL 768.27; MSA 28.1050. However, the similar acts statute has been superseded by MRE 404(b). See *City of Troy v McMaster,* 154 Mich App 564, 568; 398 NW2d 469 (1986); see also *People v LaLone,* 432 Mich 103, 134-136; 437 NW2d 611 (1989) (Archer, J., concurring in part and dissenting in part). Accordingly, even if this were a prior acts issue rather than a prior statement issue, the proper analysis would be under the evidentiary rule rather than the statute.

Defendant next argues that the trial court failed to make the proper findings to support a guilty verdict of murder in the second degree. We disagree. The requirements for the specific findings of fact by the trial court in a criminal bench trial were recently discussed by this Court in *People v Porter*, 169 Mich App 190, 193-194; 425 NW2d 514 (1988):

As to the required specificity of factual findings at a bench trial, MCR 2.517(A)(1) provides:

"In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment."

That rule applies equally to both criminal and civil cases. *People v Jackson*, 390 Mich 621, 627; 212 NW2d 918 (1973); *People v Robinson*, 145 Mich App 562, 565; 378 NW2d 551 (1985). The purpose of making factual findings is to reveal the law applied by the factfinder. *Jackson, supra*, p 627. The sufficiency of factual findings cannot be judged on their face alone; the findings must be reviewed in the context of the specific legal and factual issues raised by the parties and the evidence. *People v Melvin Davis*, 146 Mich App 537, 549-550; 381 NW2d 759 (1985). The appropriate remedy for insufficient findings of fact is to remand the case for additional fact-finding. *Jackson, supra*, p 628; *Melvin Davis, supra*, p 549.

There is currently a split among panels of this Court regarding the degree of specificity necessary to satisfy MCR 2.517(A). In *People v Davis*, 126 Mich App 66, 70-71; 337 NW2d 315 (1983), it was held that the trial court must make specific findings of fact on each element of the charged offense. Numerous cases decided subsequent to *Davis* have declined to impose such a rigid standard. Instead, those cases have held that the court rule has been satisfied where it is manifest that the trial court was aware of the factual issues and correctly applied the law, and where appellate review would

not be facilitated by requiring further explanation. *People v Fair,* 165 Mich App 294, 295-298; 418 NW2d 438 [1987]; *People v Eggleston,* 149 Mich App 665, 671; 386 NW2d 637 (1986), lv den 425 Mich 862 (1986); *People v Robinson, supra,* pp 565-566; *People v Taylor,* 133 Mich App 762, 766; 350 NW2d 318 (1984), rev'd and remanded on other grounds 422 Mich 554, 568 (1985). See also *Jackson, supra.* For the reasons discussed in *Fair* and *Taylor,* we believe the latter cases express the better view on this issue.

We believe that *Porter* represents the better view of this issue.

Turning to the case at bar, while the trial court did not make a specific finding on the issue of malice under second-degree murder, we do not believe that a remand is necessary as we believe the trial court's findings are sufficient to support a conviction for second-degree murder. Specifically, in its findings, the trial court found that the victim died of stab wounds at the hands of defendant and that there was no justification or excuse for the killing. The trial court further considered the original charge of first-degree murder, concluding that the requirement of premeditation had not been proven beyond a reasonable doubt. The court then went on to conclude that the elements of manslaughter were not present. Finally, the trial court rejected defendant's theory of accident or self-defense.[2] The court specifically noted that, while defendant's theory might be consistent with the victim's suffering a single wound, it was not consistent with the fact that the victim suffered multiple stab wounds and that there was never any assailant discovered who received any wound.

[2] As employed by defendant, the two theories were not inconsistent. Specifically, defendant took the position that the victim was accidentally stabbed by defendant while he was attempting to defend himself from some alleged attackers.

Finally, the court concluded that the elements of second-degree murder had been established beyond a reasonable doubt. Given these findings, we conclude that the trial court specifically found on the record defendant's guilt of murder in the second degree.

Moreover, we believe that the record itself supports such a finding, inasmuch as the trial court observed that the multiple wounds to the victim are more consistent with murder than self-defense or accident. Specifically, at a minimum, the victim's multiple stab wounds indicate that defendant had the intent to do great bodily harm or acted in a manner that created a high risk of death or great bodily harm with the knowledge that such was a probable result. *Porter, supra* at 192-193. Accordingly, we conclude that defendant's argument on this issue is without merit.

Finally, defendant presents a number of theories in support of an argument that his sentence of 75 to 150 years in prison constitutes an abuse of discretion because it exceeds his life expectancy. Subsequent to the submission of this case, the Supreme Court issued its opinion in *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989). In *Moore,* the Court held that long term-of-years sentences which have the effect of keeping a defendant in prison for the rest of his life without ever becoming eligible for parole are invalid. The Court held that a term-of-years sentence must be one which it "is reasonably possible for a defendant actually to serve." *Id.,* at 329. The Court, however, declined "to adopt either a rigid cap on indeterminate sentences or a rule that a trial court must make a factual determination of a particular defendant's actual life expectancy." *Id.* Rather, the sentence must be one which the defendant "has a reasonable prospect of actually serving." *Id.*

The *Moore* decision in unclear whether it is the defendant's minimum or maximum sentence which he must have a reasonable prospect of serving. See *id.* at 340-341 (Boyle, J., dissenting). Furthermore, *Moore* does not indicate whether disciplinary credits may be considered in determining the maximum permissible sentence which may be imposed under the *Moore* doctrine. Thus, we must decide, in order for defendant's sentence to be valid, whether it is "reasonably possible" for defendant to serve: (1) the minimum sentence less possible disciplinary credits, (2) the minimum sentence actually imposed, or (3) the maximum sentence imposed.

Although it is generally impermissible to consider the effects of disciplinary credits in sentencing, *People v Fleming,* 428 Mich 408, 428; 410 NW2d 266 (1987), we believe that the appropriate determination of the maximum permissible sentence under *Moore* is whether the defendant can be reasonably expected to serve the minimum sentence less disciplinary credits. First, we do not believe that this violates *Fleming,* as *Fleming* considered the propriety of the consideration of disciplinary credits in enhancing a sentence. *Fleming, supra* at 428. Here, the disciplinary credits are not being considered to enhance a sentence, but merely to determine the outside range of the trial court's discretion in sentencing in light of *Moore.* Second, the majority decision in *Moore* required that an indeterminate sentence be one which the defendant "has a reasonable prospect of actually serving," *Moore, supra* at 329, and that the defendant eventually come within the jurisdiction of the Parole Board, see *id.* at 322. The *Moore* decision does not require that the defendant actually be paroled or fully serve the maximum sentence imposed. Since it is possible to earn disciplinary

credits, it is possible for a defendant to earn those credits and become eligible for parole within his lifetime, even if it were not possible for him to serve either the minimum or maximum actually imposed without earning those credits. Finally, the majority in *Moore* did note that the accumulation of disciplinary credits by the defendant in *Moore* would not cause his minimum sentence to expire before the end of his life, though it is not clear whether the *Moore* Court was using that as the yardstick to measure the validity of the defendant's sentence. *Id.* at 322, n 18.

Turning to the case at bar, defendant was twenty-six years old at the time of sentencing and, according to his brief, he must serve at least sixty years, nine months and seven days before becoming eligible for parole, taking into account all possible disciplinary credits. Defendant would thus be approximately eighty-seven years old when he could first become eligible for parole. We hold that it is reasonably possible for defendant to earn the necessary disciplinary credits and be paroled at the age of eighty-seven. Furthermore, we believe that it is reasonably possible for defendant to live to the age of eighty-seven. Accordingly, we hold that it is reasonably possible for defendant to serve his sentence and, therefore, the sentence imposed is valid under the *Moore* doctrine.

Finally, to the extent that defendant also argues that the sentence imposed should shock our conscience, it does not. See *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Affirmed.

BRENNAN, J., concurred.

MAHER, J. *(concurring in part and dissenting in part).* I concur with the majority's affirmance of

defendant's conviction but write separately to express my belief that there no longer exists a split among panels of this Court as to the degree of specificity required of a trial court's factual findings under MCR 2.517(A). I believe that the standard espoused in *People v Davis,* 126 Mich App 66, 70-71; 337 NW2d 315 (1983), having been abandoned by all three members of that panel (myself included), is without controlling effect or precedential value. Instead, the only standard which remains viable is that which was first set forth in *People v Taylor,* 133 Mich App 762, 766; 350 NW2d 318 (1984), rev'd and remanded on other grounds 422 Mich 554; 375 NW2d 1 (1985), and which has been consistently followed by subsequent panels of this Court. See *People v Armstrong,* 175 Mich App 181, 185, n 1; 437 NW2d 343 (1989).

I respectfully dissent, however, from that portion of the majority opinion pertaining to the sentencing issue. I believe the majority, by considering the effect of defendant's potential disciplinary credits in determining whether it is reasonably possible for him to actually serve his sentence, has violated the spirit—although perhaps not the letter—of *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989), and *People v Fleming,* 428 Mich 408; 410 NW2d 266 (1987). Unpopular as those decisions may be to certain members of the legal profession and the public in general, it is not the place of this Court to read them so strictly as to avoid their clear intent and purpose. In my mind, *Moore* and *Fleming,* taken together, stand for the proposition that disciplinary credits may not be considered in determining whether it is reasonably possible for a defendant to actually serve his or her sentence.

By considering the instant defendant's potential

good time credits, the majority has effectively accomplished that which the trial court could not do in the first instance, i.e., impose a minimum sentence of seventy-five years imprisonment on defendant.[1] There is no dispute that a full seventy-five-year term of imprisonment would exceed defendant's life expectancy and, thus, violate the holding in *Moore. Moore* is satisfied only if one first takes into account the effect of defendant's potential disciplinary credits.[2] However, *Fleming* clearly prohibits such a consideration by the trial court. Either way then (i.e., considering the effect of disciplinary credits or not considering the effect of such credits), the trial court could not have imposed a minimum sentence of seventy-five years imprisonment on defendant. It seems anomalous that a trial court cannot consider the effect of disciplinary credits in exercising its sentencing discretion but that this Court may consider such credits in determining whether there has been an abuse of that discretion. I would vacate defendant's sentence and remand for resentencing.

[1] As noted in the majority opinion, the Supreme Court is unclear as to whether the *Moore* holding applies to the minimum sentence or the maximum sentence. I believe that it applies to the former.

[2] I will assume, without deciding, that defendant could live to be eighty-six years of age and that he could therefore be reasonably expected to actually serve his minimum sentence less disciplinary credits (i.e., sixty years, nine months and seven days according to defendant's appellate brief).