# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 19, 2017

Plaintiff-Appellee,

v

No. 329471
Kalamazoo Circuit Court
LC No. 2014-001371-FC

ADAM DAVID SHIGWADJA,

Defendant-Appellant.

Before: MURPHY, P.J., and METER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of assault with intent to cause great bodily harm less than murder, MCL 750.84, first-degree home invasion, MCL 750.110a(2), and second-degree arson, MCL 750.73(1). The trial court sentenced him as a second-offense habitual offender, MCL 769.10, to 83 months to 15 years' imprisonment for the assault conviction and 175 months to 30 years' imprisonment for the arson and home invasion convictions. The assault and arson sentences are to be served concurrently, but consecutive to defendant's sentence for home invasion. We affirm.

The female victim and defendant began dating as teenagers and had a tumultuous and volatile relationship for three years, marked by physical, verbal, and emotional abuse, as well as manipulative conduct, by defendant, which at times terrorized the victim and culminated on September 15, 2014, with the conduct giving rise to the convictions. On that date, the victim, who lived in a residence separate from defendant, arrived at her house in the evening, and her mother and brother were present. Subsequently, the victim went upstairs to her bedroom while speaking on a cell phone to a friend. Once in her bedroom, the victim closed her door, at which point defendant popped up from underneath a comforter that was lying next to the door. Defendant had a knife and gasoline, and he took the victim's phone. The victim began crying, which her mother and brother heard, and the victim's mother went upstairs to check on her. The victim's mother could not open the door, as defendant used his body to keep it pushed shut. The mother inquired of her daughter whether everything was okay, and the victim, who feared that defendant would kill her if she informed her mother of his presence, indicated that she was fine and was crying because of a mean text that she had received. The victim's mother insisted on coming in, but did not enter and then headed back downstairs after the victim assured her that she would be out soon.

Defendant then approached the victim and cut her chest with the knife, indicating that he was going to kill her. The victim collapsed, crouched down, and began sobbing. Her mother heard a thud, her daughter cry out, and what sounded like wrestling, and the victim's mother raced back to the bedroom, slamming the door open after some initial unsuccessful efforts at opening the door. According to the victim, defendant had poured the gasoline in front of the bedroom door and to the side and then lit it on fire as the mother was entering the room. Flames erupted from the floor to the ceiling, and the victim called out for her brother to come help. The victim testified that defendant wrapped his arms around her and began moving the two of them toward the fire; she then closed her eyes, believing that she was going to die. Her brother, wielding a baseball bat, reached the bedroom and pushed through the flames. The victim's brother thought that he saw defendant holding a knife up to the victim's neck and chest area. The brother began hitting defendant with the bat, driving him back toward the bedroom's window. At some point, defendant released the victim, and he then jumped through the window, landed on the ground, and raced from the scene. In the process of swinging the bat at defendant in the chaotic, fiery scene, the victim's brother had accidently struck his sister in the head, and she was rushed to the hospital for treatment of a severe head injury. The victim's hair was singed on one side from the fire. An officer later arrested defendant as he limped down a street; defendant had injuries to his knuckles and burns on his leg.[1]

In the bench trial, the court found defendant guilty of the arson and home invasion charges, but rejected a charge of assault with intent to commit murder, MCL 750.83, finding defendant guilty of the lesser included offense of assault with intent to commit great bodily harm less than murder. Defendant now appeals as of right.

On appeal, defendant first argues that the trial court erred when it allowed the victim to testify about prior acts of domestic violence committed by defendant against the victim that were not included in the prosecution's pretrial notice of intent. The evidence, he maintains, was not admissible under MRE 404(b) and, to the extent that it was relevant and admissible under MCL 768.27b, the prosecution's failure to give notice prevented defendant from "adducing evidence to refute the allegations, which he denies." Defendant asserts that the testimony was highly prejudicial and deprived him of a fair trial, where it was inconsistent with his testimony that his intent was only to self-immolate and not to burn the residence. According to defendant, especially prejudicial was evidence showing that defendant had allegedly stated in July 2014 that he intended to drive his car into the victim's home with gasoline in order to cause an explosion.

Given that the prior acts and the assault charge clearly constituted "domestic violence," where defendant and the victim had a dating relationship and the conduct entailed assaultive behavior or the causing of physical or mental harm, MCL 768.27b governed the admission of the

---

[1] Defendant testified that he had accidently bumped the victim's chest with the knife, that he poured the gasoline on the left side of his body and lit himself on fire, while admitting on cross-examination that he only had burns near his ankle and on the bottom of his pants, and that, after briefly blacking out in the bedroom, he grabbed the victim in an effort to keep her away from the flames.

prior acts, superseding MRE 404(b), so to the extent that defendant's argument is based on MRE 404(b), it is rejected. See *People v Watkins*, 491 Mich 450, 476-477; 818 NW2d 296 (2012). On a substantive level, defendant makes no argument that the evidence was inadmissible under MCL 768.27b, and this statutory provision allows for the admission of "domestic violence" evidence for any relevant purpose, including propensity or the character of the accused, subject to MRE 403. MCL 768.27b(1); *People v Daniels*, 311 Mich App 257, 272-273; 874 NW2d 732 (2015).[2]

Defendant's argument, as relevant under MCL 768.27b, is ultimately premised solely on a lack of notice. Under MCL 768.27b(2), "[i]f the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial . . . ." Because the issue was not preserved by defendant, our review is for plain error affecting substantial rights, requiring a showing of prejudice, as well as a showing of actual innocence or, independent of innocence, of an error that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant's cursory and vague assertion that the lack of notice "prevented him from adducing evidence to refute the" challenged evidence is inadequate to establish the requisite prejudice; we note that defendant does not explain how he would have proceeded differently with notice, nor does he specifically explain why the lack of notice prevented him from refuting the prior acts. See *People v Jackson*, 498 Mich 246, 278-279; 869 NW2d 253 (2015) (no prejudice established from the lack of notice, where the defendant did not show how he would have approached the trial or presented his defense differently had the required notice been given, and where he did not identify or present offers of proof from any witnesses that he might have called with notice). And with respect to defendant's threat to use his vehicle and gasoline to blow up the victim's home, this was a *statement* in a text message, not an other act. See *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989) ("As the Supreme Court recently noted, a prior statement does not constitute a prior bad act because it is just that, a prior statement and not a prior bad act.") Accordingly, no notice under MCL 768.27b was even necessary to introduce that particular testimony. In sum, reversal is unwarranted under the plain-error test.

Defendant next argues that there was insufficient evidence to support his arson conviction, where a rational factfinder could not have found beyond a reasonable doubt that defendant intended to burn the dwelling or intentionally committed an act that created a very high risk of burning the dwelling, with defendant being aware of the risk and disregarding it. Defendant contends that the evidence instead showed that he was attempting suicide by pouring gas on his left pant leg and then igniting it. For purposes of second-degree arson, the prosecution had to prove that defendant "willfully or maliciously" burned, damaged, or destroyed by fire or

---

[2] Had defendant challenged the admissibility of the evidence under MCL 768.27b, aside from the purported notice failure, we would have rejected the argument, considering that the prior acts revealed his abusive history and character, strongly bearing on his credibility, motivation, and intent relative to the charged offenses. And the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, MRE 403.

explosive "a dwelling . . . or its contents . . . ."  MCL 750.73(1).  At trial, it was undisputed that the victim's home constituted a dwelling and that defendant started a fire that damaged the dwelling and its contents.  The only issue in dispute was whether he "willfully or maliciously" burned the dwelling or its contents.[3]

The phrase "willfully or maliciously" means to commit an act "while knowing it to be wrong and without any just cause or excuse" and to do so "intentionally or with a conscious disregard of known risk to the property of another."  *People v Richardson*, 118 Mich App 492, 496; 325 NW2d 419 (1982) (quotation marks and citation omitted).  The evidence showed that defendant brought gasoline to the victim's home, poured it out, and ignited it with a lighter.  Although he claimed that he only intended to pour the gasoline on himself, there was evidence and testimony that directly contradicted his version of events.  The victim testified that defendant poured the gasoline across the doorway just as her mother was attempting to force her way into the bedroom.  And the victim's mother similarly testified that the spill appeared to be in a line before the door and that when she tried to enter the bedroom she was blocked by a wall of flames.  The prosecution also presented photos of the damaged doorway that suggested that the gasoline was deliberately poured across the doorway, and it presented photos of defendant's injuries that suggested that he did not directly pour the gas on himself.

Viewing this evidence in a light most favorable to the prosecution, taking into consideration the circumstantial evidence and all reasonable inferences arising from the evidence generally, resolving all conflicts in the evidence in favor of the prosecution, deferring to the trial court's assessment of the weight of the evidence and the credibility of the witnesses, *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), and appreciating that minimal circumstantial evidence suffices to establish intent, which can be inferred from any facts in evidence, *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008), we hold that the evidence was sufficient to find that defendant intended to burn the house or that he intentionally committed an act that created a very high risk of burning the dwelling, with defendant being fully aware of the risk and disregarding it.  Indeed, it would defy logic to conclude that defendant

_____

[3] As reflected in *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), in the context of a sufficiency argument, the principles governing our review of a jury's verdict apply equally when reviewing a verdict rendered in a bench trial:

> We review claims of insufficient evidence de novo. When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [Citations omitted.]

-4-

was unaware of the fire hazard or risk of fire damage to the dwelling caused by dousing an area with gasoline, if even just his pant leg, and then igniting the gasoline. Reversal of the arson conviction is unwarranted.

Defendant next maintains that there was insufficient evidence to support the conviction of assault with intent to cause great bodily harm less than murder, where there "was no evidence that [he] intended to cause great bodily harm." A person commits the offense when he or she attempts or threatens to do corporal harm to another with force or violence and does so with the intent to cause great bodily harm less than murder. See *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The requisite intent is the intent to do serious injury of an aggravated nature. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). And only minimal circumstantial evidence is necessary to show the required intent. *Id.* at 629.

Here, defendant cut the victim with a knife, began physically forcing the victim toward the fire started by defendant, such that she thought that she was about to die before her brother entered the room and saved her, and defendant expressly indicated that he intended to kill the victim. The victim's hair was singed by the fire. Viewing this evidence in a light most favorable to the prosecution, taking into consideration the circumstantial evidence and all reasonable inferences arising from the evidence generally, resolving all conflicts in the evidence in favor of the prosecution, deferring to the trial court's assessment of the weight of the evidence and the credibility of the witnesses, *Kanaan*, 278 Mich App at 618-619, and appreciating that minimal circumstantial evidence suffices to establish intent, which can be inferred from any facts in evidence, *Unger*, 278 Mich App at 223, we hold that the evidence was more than sufficient to show that defendant intended to cause serious injury of an aggravated nature, i.e., great bodily harm, to the victim.

Defendant next argues that the trial court erred in its handling of his objection to statements that were contained in his presentence investigation report (PSIR). The PSIR indicated that the victim's mother had been informed by the victim of a previous incident in which defendant abducted her at knife point, drove her to his grandparents' residence in Paw Paw, and held her captive for 14 hours. This incident was not addressed in the evidence presented at trial, and defense counsel at sentencing stated that defendant disputed the claim and objected to its inclusion in the PSIR. The prosecution responded, stating that the incident had been reported. The trial court indicated that "given the extensive information attached in support of everyone's brief here too or sentencing memorandums – it certainly is addressed." The court decided to leave the information in the PSIR, implicitly finding it to be accurate, but the court also added to the PSIR that defendant disputed the claim and that there was no evidence at trial concerning the incident. The court noted, "I think I can consider it in totality for sentencing." On appeal, defendant claims that the sentence was based upon inaccurate information, i.e., the kidnapping incident, and requests resentencing or an evidentiary hearing.

"If any information in the presentence report is challenged, the court must allow the parties to be heard regarding the challenge, and make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing." MCR 6.425(E)(2). A PSIR may include "any . . . information that may aid the court in sentencing." MCR 6.425(A)(1)(*l*). The scope of a PSIR is necessarily broad; therefore, "[a] judge preparing to sentence a defendant may consider comments made by the

defendant to the probation officer during the presentence interview in addition to evidence adduced at trial, public records, hearsay relevant to the defendant's life and character, and other criminal conduct for which the defendant has not been charged or convicted." *Morales v Parole Bd*, 260 Mich App 29, 46; 676 NW2d 221 (2003) (citation omitted).

Defendant never requested an evidentiary hearing below; defense counsel quickly accepted the trial court's resolution and moved on. A PSIR is presumed to be accurate and may be relied on by a sentencing court "unless *effectively* challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003) (emphasis added), citing *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). The simple and cursory assertion by counsel below that defendant "disputes" the incident absent any elaboration and without having defendant himself step forward at the sentencing hearing and deny the incident or offer an affidavit was not an "effective" challenge, such that an evidentiary hearing was required with the burden shifting to the prosecution to show by a preponderance of the evidence that the incident occurred. See *Callon*, 256 Mich App at 333-334 (noting that "it is incumbent on a defendant to first mount an effective challenge to invoke his right to a hearing on a contested fact at sentencing and, thus, the need for an evidentiary hearing with a finding by the trial court based upon the preponderance of evidence" and that "a flat denial of an adverse factual assertion" may not suffice, as opposed to "an affirmative factual assertion," depending on the nature of the disputed matter) (citations and quotation marks omitted). Again, defendant did not even request an evidentiary hearing below. And on appeal, defendant fails to even frame an argument employing the pertinent caselaw and analysis that contemplates whether there was an "effective" challenge necessitating a hearing. We conclude that the trial court complied with MCR 6.425(E)(2) by allowing defendant to present the challenge and then by resolving the challenge, and any argument about an evidentiary hearing is rejected and has not been properly presented to us.

Finally, defendant argues that, given the evidence in the record, the trial court should have assessed: offense variable (OV) 3 (physical injury to victim), MCL 777.33, at 10 points instead of 25 points; OV 4 (psychological injury to victim), MCL 777.34, at zero points instead of 10 points; OV 7 (aggravated physical abuse), MCL 777.37, at zero points instead of 50 points; OV 10 (exploitation of vulnerable victim; predatory conduct), MCL 777.40, at zero points instead of 15 points; OV 13 (continuing pattern of criminal behavior), MCL 777.43, at zero points instead of 25 points; and OV 16 (property damaged or destroyed), MCL 777.46, at zero points instead of 10 points. We first note that, to the extent that defendant is making a claim under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), that the trial court engaged in constitutionally-impermissible fact-finding when scoring the challenged OVs, the argument is rejected, given that defendant was sentenced after *Lockridge* was issued and pursuant to advisory guidelines. See *People v Biddles*, __ Mich App __; __ NW2d __ (2016); slip op at 5-6 ("The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding.").

Next, the *unchallenged* total OV points for defendant is 60; he had been assessed 185 total OV points. With respect to the applicable guidelines grid concerning class B offenses, the

top OV level is level VI, which requires a score of 75 or more points. MCL 777.63. Accordingly, if, in regard to the challenged scores, the trial court did not err in assessing 15 of those points, there would be no basis for reversal, as only when the guidelines range is altered is it necessary to remand for resentencing. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court observed:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations omitted.]

With respect to OV 3, a trial court must assess 25 points if it finds that a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Defendant suggests that the trial court could only consider the nature and extent of the physical injury that he actually inflicted on the victim, which would not include the injury to the victim's head that was inflicted by her brother while swinging the baseball bat. However, the statute did not limit the trial court to consideration of only those injuries directly inflicted by defendant himself. Rather, the Legislature simply required the scoring of points for an injury that "occurred to a victim" during the offense. MCL 777.33(1)(c). Thus, the trial court could properly consider the injury that the victim suffered when her brother accidentally struck her with the baseball bat, given that she would not have suffered the head injury but for defendant's home invasion and assault. See, e.g., *People v Laidler*, 491 Mich 339, 345-346; 817 NW2d 517 (2012) (holding that the trial court could properly score OV 3 on the basis of an injury inflicted by a homeowner who exercised his right to use force in self-defense during a home invasion because the injury to a coperpetrator would not have occurred but for the defendant perpetrator's commission of the home invasion).

Defendant further contends that there was no evidence that the victim's head injury was life threatening or permanently incapacitating. During her trial testimony, the victim agreed that she needed surgery to treat the head injury. And the PSIR stated that the victim suffered "a severe head injury." Also, it was indicated at sentencing that the victim underwent "brain surgery" and "needed 24-hour care for 6-weeks" as a result of the injury.[4] It is within the realm of common understanding that a strike to the head with a baseball bat can cause a life-threatening

---

[4] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also consider a victim impact statement in a PSIR or statements or letters submitted to the court for consideration on sentencing. See, e.g., *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012). Further, the trial court may properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *Id.* at 109.

injury, and the trial court could reasonably infer from the testimony and statements at sentencing that the victim's head injury was such an injury. We find no error in the trial court's ruling.

Adding 25 points for OV 3 to the unchallenged 60 points places defendant at OV level VI, the top level (75+), MCL 777.63, and therefore there is no basis to remand for resentencing, *Francisco*, 474 Mich at 89. Accordingly, there is no need for us to go further. That said, we find that the evidence also adequately supported the scores for OVs 4, 7, 10, 13, and 16. There was overwhelming evidence that the victim suffered "[s]erious psychological injury requiring professional treatment," including post-traumatic stress disorder, thereby supporting the assessment of ten points for OV 4, MCL 777.34(1)(a). Next, there was sufficient evidence that the "victim was treated with . . . egregious conduct designed to substantially increase the fear and anxiety . . . [she] suffered during the offense," including defendant popping out from underneath the comforter after hiding in the victim's bedroom, holding her at knifepoint, telling her that he was going to kill her, and then attempting to burn her alive, thereby supporting the assessment of 50 points for OV 7, MCL 777.37(1)(a). Next, there was overwhelming evidence that defendant engaged in "preoffense conduct directed at [the] victim . . . for the primary purpose of victimization[,]" i.e., predatory conduct, including preoffense ominous and threatening text messages sent by defendant to the victim, thereby supporting the assessment of 15 points for OV 10, MCL 777.40(1)(a) and (3)(a). Next, there was sufficient evidence that the home invasion offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person," including a 2013 felonious assault conviction and the three offenses for which defendant was convicted in this case, thereby supporting the assessment of 25 points for OV 13, MCL 777.43(1)(c). As indicated in MCL 777.43(2)(a) for purposes of OV 13, all crimes committed by defendant "within a 5-year period, including the sentencing offense," had to be counted, and without regard to "whether the offense resulted in a conviction." Moreover, contrary to defendant's argument, multiple concurrent offenses arising from the same incident or from a single criminal episode are to be counted in scoring OV 13. *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013); *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). We note that the assault, arson, and home invasion crimes were three separate and distinct offenses. Finally, there was sufficient evidence that the fire-damaged portion of the home had a value of more than $20,000, including the information in the PSIR that the insurance carrier paid more than $24,000 to cover the damages, thereby supporting the assessment of ten points for OV 16, MCL 777.46(1)(b). In sum, the trial court did not commit clear error in scoring OVs 3, 4, 7, 10, 13, and 16. Resentencing is unwarranted.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Amy Ronayne Krause