# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee/Cross-Appellant,

v

TRAY ARTHUR RYAN,

        Defendant-Appellant/Cross-
        Appellee.

UNPUBLISHED
February 8, 2018

No. 335516
Eaton Circuit Court
LC No. 15-020252-FC

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of imprisonment of 60 to 90 years for each conviction. The prosecution has filed a cross-appeal, challenging the trial court's pretrial ruling limiting the admissibility of a police detective's testimony concerning a jailhouse conversation between defendant and the detective that was initiated by defendant. We affirm defendant's convictions, and decline to consider the prosecution's issues on cross-appeal as moot.

This case arises from an armed robbery that took place in Charlotte in July 2015. The principal complaining witness testified that he was at home working on his bathroom in the company of his son and the mother of his daughter. At 10:15 or 10:20 p.m., he went outside to get a board and was approached by two men. The complainant stated that a fluorescent light illuminated the area, and described the two men as "one . . . shorter than me and one . . . taller than me." The complainant identified defendant as the taller of his assailants, and added that he was able to see defendant's face. According to the complainant, the two men "pulled pistols out" and demanded that he "be quiet and get on the ground." The complainant testified that he complied while feeling great fear, upon which the shorter man put his boot to the complainant's head while defendant tied him up.

According to the complainant, the shorter man threatened to kill the complainant's son if the complainant did not disclose the location of $10,000. The complainant admitted that he did have $10,000 in cash at the time. The complainant testified that the shorter man entered the house while defendant threatened to kill him, and that defendant followed the shorter man into

the house after approximately 30 seconds. The complainant was able to break free from his restraints. He started running away and defendant appeared to give chase, but then defendant ran past him. The complainant stated that he continued to run, and was able to flag down a neighbor in a car who allowed him to use his phone to call 9-1-1.

On appeal, defendant first argues that the trial court erred in denying his motion to exclude the complainant's identification of him at trial. A trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous; clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made. *People v Williams*, 244 Mich App 533, 537; 624 NW2d 575 (2001).

The complainant was the sole witness at an evidentiary hearing that the trial court conducted in response to defendant's motion to suppress, and provided he an account of the assault similar to the account provided at trial. The complainant additionally testified that after calling the police on the night in question, he ended up in a sheriff's deputy's car for approximately two hours, in which the police eventually took him to a location where the police said "they were gonna try to drive by . . . the perpetrator and see if . . . we could identify him . . . ." The following exchange took place between the complainant and the prosecutor:

> *Q.* And now . . . at some point in time, the officers gave you notification that they had a suspect in custody?
>
> *A.* Yes.
>
> *Q.* And that they were gonna drive you past that person?
>
> *A.* Yes.
>
> *Q.* And did you participate in that kind of a drive-by?
>
> *A.* Yes.
>
> *Q.* And did you ever get out of the patrol vehicle?
>
> *A.* No.
>
> *Q.* To the best of your knowledge, did the vehicle ever stop?
>
> *A.* Never stopped.
>
> *Q.* About how fast would you say you were going when you drove past the person?
>
> *A.* It was 30, 35. It was very quick. And I thought that, if we were doing a drive-by, it should be slow—
>
> *Q.* Okay.
>
> *A.* —but it was fairly quick.

The complainant estimated that it was 2:30 or 3:00 a.m. by this time, and stated that it was still dark outside, and that the area where the suspect was standing was "[n]ot really" illuminated. The complainant described seeing the suspect "standing at the back of the police car . . . back towards us, and police around him." According to the complainant, the suspect "looked like the right size," but "[i]t's just kind of hard to recognize him," including "the clothing and stuff, cause . . . it happened pretty quick," referring to "[t]he whole interaction." The complainant testified that a police officer asked him if he thought he "could identify the person," but when asked if the officer ever said something along the lines of "'this is the guy,'" the complainant replied, "They never said nothin' like that. . . . [A]ll he asked me is direct questions: Do I recognize the clothing? You know, does it kind look like him?" The complainant added, "I said, 'the height looks right and the build looks right.'"

The complainant additionally testified that he had attended "[e]very one" of the court hearings connected with the case, where he saw defendant as the criminal accused. The complainant stated that he recognized defendant as one of the men at his house with a gun on the night in question by "[h]is forehead and chin," elaborating that "[h]e's got a long forehead and his chin is kinda pointy," which impressions the complainant formed as the "picture" he was left with from "when he was standing next to the fellow with the pistol in my face." The complainant stated that he would assign a high level of confidence to his identification.

In denying the motion to suppress the complainant's identification, the trial court explained:

> The Court can find nothing wrong, nor that this was an impermissible or suggestive identification that took place when the witness was in the back seat of the vehicle and drove by the area where the defendant was standing in this matter.

> On the scene confrontations, the courts have previously said, are reasonable, indeed, indispensable police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime . . . or merely an unfortunate victim of circumstance.

> He did not identify the defendant at that time. And, of course, he's subject to cross-examination at any future trial in this matter.

> As the prosecutor points out and the Court finds, this really goes to the weight, not the admissibility, since there's no impermissible suggestiveness that took place by the police in this matter that would taint the identification made today by the witness in court. And, certainly, the witness will be cross-examin[ed] at any proceeding in the future concerning what he may have said to the detective on a prior occasion or what he may have said when he was driven by the witness at 3:00 in the morning.

The fairness of an identification procedure is evaluated in light of the "totality of the circumstances" to determine whether the procedure was so impermissibly suggestive as to render the identification irreparably unreliable. *People v Davis*, 146 Mich App 537, 548; 381 NW2d 759 (1985). Where a defendant is able to show that an identification procedure was suggestive

to the extent that it would likely lead to a misidentification, in-court identification should not follow unless the prosecution can establish an independent basis for the identification. *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995).

> Improper suggestion commonly comes about because of three things. First, the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person. Second, if the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person. Third, . . . eyewitness identification has inherent weaknesses from the standpoint of the witness's problems of sensation, retention, etc., and the similarity in appearance of people. [*People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973), overruled in part on other grounds by *People v Hickman*, 470 Mich 602, 603-604; 684 NW2d 267 (2004).]

In this case, defendant emphasizes that the drive-by exposed the complainant to only one suspect, and asserts that the police suggested to the complainant that the man they had detained in the parking lot was the perpetrator of the robbery. Although the complainant did agree that the police had asked him to look at a suspect, he clarified, when asked if the police ever said something along the lines of "this is the guy," that "[t]hey never said nothin' like that." Further, defendant nowhere suggests that the trial court erred in recognizing that the police may conduct on-the-scene confrontations early in an investigation in order that they might immediately understand if they have a plausible suspect in view. See *People v Winters*, 225 Mich App 718, 728; 571 NW2d 764 (1997) ("[O]n-the-scene confrontations are . . . indispensable . . . because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance.").

Moreover, the complainant expressed concern that the speed of the vehicle seemed excessive for the intended purpose, and also that the area was not well lit. Had the complainant been unduly convinced that the police had the right man, he presumably would have ended up with neither concern. Indeed, that the drive-by procedure was not overly suggestive is apparent from the complainant's report on that occasion only that the suspect's size and build appeared familiar, while feeling unable to offer information concerning the suspect's clothing or otherwise more positively identify him, thus showing that the complainant was not using the police's discovery and detention of a suspect to fill in any gaps in his recollections.

Defendant's arguments concerning the complainant's attendance at pretrial court proceedings are even less persuasive. Not in dispute is that the complainant had a right to attend such proceedings along with the rest of the general public. And that the victim of a crime will in the normal course see the suspected perpetrator in court is obvious, if only to identify him at trial, and also, where applicable, the preliminary examination. Defendant does not explain why a witness's exposure to a suspect in court in pretrial proceedings transforms that setting into an impermissibly suggestive one. And, obviously, there was no police or other investigative misconduct involved in the complainant's decision to attend pretrial proceedings relating to the crime against him.

For these reasons, defendant has failed to show that the trial court erred in characterizing any concerns relating to suggestiveness in the complainant's identification of him as one of his assailants as properly relating to the weight of that evidence, not its admissibility.

Defendant next argues that he was denied a fair trial when a prosecution witness implicated him in an unrelated robbery. Defendant argues that the trial court should have declared a mistrial over the matter, and that defense counsel was ineffective for having declined to request that remedy.

This Court generally reviews a trial court's decision whether to grant a mistrial for an abuse of discretion. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). However, unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Because defendant's claim of ineffective assistance of counsel was not raised in the trial court, our review of that claim is limited to errors apparent from the record. See *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005).

The witness in question testified that he was in "boot camp" under the auspices of the Department of Corrections as part of his sentencing for certain criminal convictions, and admitted that he pleaded guilty initially with no agreement with the prosecution in the matter, but then "reached out" to the prosecutor's office for information regarding the instant case because, as the witness put it, "defendant robbed my family." After defense counsel objected and the jury was excused from the courtroom, defense counsel asked that the witness's statement be stricken. The prosecutor agreed with that request and explained "that wasn't the answer that I was expecting to that question," but rather "I was expecting the answer about something along getting time for a reduced sentence." The prosecutor stated that "there has been information about a past history between these two individuals" of which defense counsel "has been aware," and added, "I don't know when it happened. I don't know where it happened. . . . I don't know if there's been any charges or any connection or any investigation, but that's not what we're looking for here, today."

When the jury returned, the trial court instructed it as follows:

Ladies and gentlemen, I'm going to strike the last response that was given . . . on the witness stand. Any past relations between the witness and [defendant] or his family were simply allegations. There is no [corroboration]. There have been no charges. And it's not an appropriate discussion for you to consider in this case.

So, his answer is struck, and I ask that you not consider it.

We conclude that the parties and trial court correctly recognized an error, and adequately addressed it.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich App at 228 (citations omitted). However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, "an unresponsive, volunteered answer to a proper

-5-

question is not grounds for the granting of a mistrial." *Id.* In this case, the witness volunteered his statement about defendant having robbed his family in response to proper inquiry into his motive for testifying. Indeed, the prosecutor did not expect such response.

We conclude that the utterance giving rise to this issue, "defendant robbed my family," without more, was not seriously prejudicial. No details about that event were disclosed, leaving the jury with no basis for forming an opinion on the nature or seriousness of the matter. Also militating against any undue prejudice from the few words of improper testimony was the trial court's characterization of them as referring to mere uncharged, uncorroborated "allegations" involving "past relations" between defendant and the witness or his family. And regardless of what the jurors might have imagined was behind what the witness said, the court's instructions that the witness's statement was stricken and "not . . . appropriate" for them to discuss or consider should have eliminated any unfair prejudice. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Even if the jurors might nonetheless have retained some lingering memory relating to the improper testimony through its deliberations, a criminal defendant is entitled to a fair trial, not necessarily a perfect one. See *People v Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992). Because the imperfection here was not an irregularity so prejudicial as to impair defendant's ability to receive a fair trial, the sustaining of the defense objection and admonishment to the jury to disregard it were sufficient corrective actions, and a motion for a mistrial would properly have been denied.

For that reason, defendant's casting of this issue under the rubric of ineffective assistance of counsel is unavailing. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (Declining to advance a meritless position does not constitute ineffective assistance of counsel). Indeed, even if defense counsel had reason to believe that a request for a mistrial might have been granted, counsel might have been sufficiently satisfied at how well things were going for the defense up to that time that counsel preferred not to risk starting anew. See *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999) (a defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy).

For these reasons, defendant fails to show that he is entitled to appellate relief over this issue.

Defendant's final argument on appeal is that part of the prosecutor's closing argument denied him a fair trial, and that defense counsel was ineffective for declining to raise an objection in the matter.

An unpreserved claim of prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000), citing *Carines*, 460 Mich at 761-762. Accordingly, "[r]eview of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (quotation marks and citation omitted).

Defendant makes issue of the following comments from the prosecutor's closing argument:

> Ladies and gentlemen, one of the things that you're gonna have to decide . . . as you weigh witness credibility, is why would someone lie. Why would [the principal complainant, the mother of his daughter, and his son] lie about this? They . . . have nothing to gain. To go through all of this, nothing to gain.

Defendant asserts that these comments "shifted the burden of proof onto [defendant] to make an affirmative offer of evidence as to why the three complainants would lie." See *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970) (the prosecution bears the burden of proving each element of each offense beyond a reasonable doubt); *People v Fields*, 450 Mich 94, 108-109; 538 NW2d 356 (1995) (a criminal defendant may rely on the presumption of innocence, in which case "no reference or comment may be made regarding defendant's failure to testify").

As an initial matter, we observe that the challenged comments included no words actually indicating that the defense was obliged or otherwise expected to introduce evidence relating to the credibility of those prosecution witnesses.

Further, where the jury is faced with a credibility question, the prosecutor is free to argue credibility from the evidence. *People v Smith*, 158 Mich App 220, 231; 405 NW2d 156 (1987). Nowhere in this instance did the prosecutor deviate from the evidence as if to suggest that he had some personal knowledge concerning the credibility of the prosecution witnesses. See *People v Whitfield*, 214 Mich App 348, 352; 543 NW2d 347 (1995) (the critical inquiry is whether the prosecutor urged the jury to suspend its own judgment out of deference to the prosecutor or police). Moreover, this argument was in fact responsive to the defense strategy of asserting mistaken identity, and suggesting that the prosecution witnesses were unreliable. Defense counsel's opening statement included the following:

> I expect for you to hear inconsistent statements as to [defendant's] involvement. I expect for you to hear statements by the victims, eventually, that [complainant]—that he does not know what he saw that night.
>
> * * *
>
> Two of the victims are not going to be able to identify [defendant] before your presence . . . .
>
> * * *
>
> It is an investigation and an attempt by the witnesses to convict, not to disclose the truth. There is not an intentional lie, but there are misstatements that lead towards a conclusion rather than statements that allow people to lead to their own conclusion.

* * *

> So, keep an open mind. Challenge yourselves, challenge the testimony, challenge the evidence and challenge the statements.

Underscoring the propriety of the prosecutor's argument in favor of the credibility of the prosecution's witnesses is that defense counsel invited such argument for having attacked those witnesses' credibility in the first instance.

For these reasons, defendant has brought no improper commentary, or prosecutorial misconduct, to light.

And because there was no impropriety in the challenged commentary, defense counsel would have had nothing to gain from objecting to it. See *People v Meadows*, 175 Mich App 355, 362; 437 NW2d 405 (1989) ("[c]ounsel is not obligated to make futile objections."). Accordingly, no claim of ineffective assistance of counsel can be predicated on the lack of an objection in this instance.

The prosecution argues on cross-appeal that the trial court erred in having initially concluded that a police detective's testimony should be limited for having violated defendant's constitutional rights against self-incrimination, US Const, Am V; Const 1963 art 1, § 17, and to have an attorney present at an interrogation, US Const, Am VI; Const 1963, art 1, § 20, in the course of some jailhouse conversation between the detective and defendant, initiated by the latter.

However, because defendant was convicted and sentenced to the prosecution's satisfaction, the prosecution is not seeking any change in the actual result below and thus is not actually assuming the position of cross-appellant. Further, on the prosecution's motion for reconsideration below, the trial court recognized that the prosecution did not wish to elicit testimony implicating the constitutional issues that had concerned the court, and explicitly "replace[d]" its earlier order with one declaring that the police detective was free to testify in connection with his entire investigation.

On appeal, the prosecution acknowledges that it received a favorable ruling on its motion for reconsideration, but urges this Court to decide the challenges on cross-appeal even so, on the grounds that the decision on reconsideration left intact the trial court's earlier conclusions that the detective violated defendant's constitutional rights, and that those findings could have long-term implications on the detective's career.

We do not share the prosecution's concerns. The trial court's decision to replace its original order limiting the use of the detective's testimony with one that imposed no limits on what the prosecution wished to do with that witness rendered gratuitous any earlier indications from the court that it deemed the detective to have violated defendant's constitutional rights, and thus left the prosecution with no judicial determination to appeal. We further doubt that a police detective's career prospects are jeopardized only because the detective engaged in some jailhouse conversation that raised an issue ultimately resolved in favor of the prosecution. We conclude that this situation calls for adherence to the principle that "courts should

not grapple with finding a constitutional question when the case can be decided on other grounds." *People v Jackson*, 487 Mich 783, 801; 790 NW2d 340 (2010).

For these reasons, we decline to consider and decide the prosecution's issues on cross-appeal.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien