# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAVON MARIE BETHEA,

        Defendant-Appellant.

UNPUBLISHED
March 22, 2018

No.  334004
Macomb Circuit Court
LC No.  2015-003397-FH

Before:  GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right her convictions, following a jury trial, of two counts of second-degree child abuse, MCL 750.136b(3).  The trial court sentenced defendant to concurrent terms of 80 to 120 months' imprisonment.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant is the mother of NB.  On May 29, 2015, defendant's boyfriend brought NB to her father, Joseph Quinn's, home for his court-ordered parenting time.  NB, who was then 5 years old, was crying and her nose was bleeding.  Quinn noticed what appeared to be scars from cuts or burns on NB's arms and neck.  NB's face was swollen, and she had what appeared to be welts on her face.  Quinn contacted the Clinton Township police, who photographed NB's injuries and took a statement from Quinn.

After defendant was arrested and charged with child abuse, the trial court appointed an attorney to represent her.  However, before her preliminary examination, defendant retained her own counsel.  In October 2015, defendant's retained counsel moved to withdraw, noting that defendant had expressed a desire to hire a new attorney.  The trial court granted the motion, but rather than retain a new attorney, defendant requested that she be appointed counsel.  The trial court appointed Michael B. Kilpatrick as defendant's new attorney.  The trial court granted several adjournments to allow Kilpatrick to subpoena documents, explore potential expert witnesses, and file motions in limine.  On the first day of trial, April 26, 2016 (almost a year after defendant was first arrested and charged), Kilpatrick informed the trial court that he was not ready to proceed with trial because defendant had informed him that morning that she wished to retain different counsel.  The trial court denied Kilpatrick's motion to withdraw, stating that the matter had been pending for many months, and that defendant "had clearly all of that time to

-1-

retain who[m]ever she wants." The trial court stated its belief that defendant's request was "strictly for delay."

At trial, NB testified that defendant had burned her with cigarettes and had cut her with a knife. Dr. Marcus DeGraw, who was qualified as an expert in pediatrics and child abuse, testified that NB's injuries were consistent with cigarette burns and a cut from a knife. Defendant was interviewed by Clinton Township Detective Jeffery Bishop and United States Secret Service Agent Brian Proven, who both testified regarding statements that defendant had made in several interviews. In her interviews, defendant acknowledged having committed several acts of violence toward NB, including punching her in the stomach as punishment for disobeying defendant's command that NB not use defendant's computer, striking NB with a belt so many times that defendant could not count them, striking NB in the face with a spatula and a kitchen spoon, and striking NB with her hands with such frequency or force that defendant's hands became blistered. Defendant denied burning NB with cigarettes or cutting her with a knife. However, defendant admitted threatening NB with a knife by holding it an inch or two from NB's neck when NB had stood too close to the hot stove while defendant was cooking.

Defendant was convicted as described. This appeal followed.

## II. DENIAL OF RIGHT TO COUNSEL OF CHOICE

Defendant first argues that the trial court abused its discretion when it denied Kilpatrick's motion to withdraw on the first day of trial so that defendant could retain new counsel. We disagree. "We review for an abuse of discretion a trial court's exercise of discretion affecting a defendant's right to counsel of choice." *People v Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003) (quotation omitted). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation omitted).

"The Sixth Amendment guarantees an accused the right to retain counsel of choice." *Akins*, 259 Mich App at 557 (quotation omitted). But this right is not absolute; rather, the defendant's right to choose his or her own counsel must be balanced against "the public's interest in the prompt and efficient administration of justice . . . in order to determine whether an accused's right to choose counsel has been violated." *Id*. (quotation marks and citations omitted).

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

The record does not reveal any error. Kilpatrick informed the trial court on the first day of trial, and only minutes before jury selection was to begin, that he wished to withdraw as defendant's counsel. The trial court held an immediate hearing on Kilpatrick's motion to withdraw. At the hearing, Kilpatrick informed the court that just that morning defendant had told him that she wished to retain new counsel rather than to proceed with Kilpatrick. No reason was given; there was no indication that there was a breakdown in the attorney-client relationship, and there was no suggestion that Kilpatrick could not effectively represent defendant at the trial that was to begin momentarily. Further, Kilpatrick was defendant's third attorney. He had represented defendant for over six months and for the majority of the pretrial proceedings. He had filed numerous motions on defendant's behalf, and was well-versed in the facts and issues of her case.

Under these circumstances, the trial court did not abuse its discretion. Defendant presented no legitimate reason for seeking to obtain new counsel. Further, defendant waited until literally the "last minute" before trial to bring the matter to the trial court's attention. The trial court was justified in believing that this was simply an attempt by defendant to further delay trial. Defendant also has not presented evidence of prejudice from the trial court's decision. *Echavarria*, 233 Mich App at 369. Additionally, the attorney whom defendant wished to retain had only been contacted that morning. Given that this new attorney would have required additional time to become familiar with the matter in order to provide competent representation, the trial court properly balanced the public's interest in the prompt and efficient administration of justice against defendant's assertion of the right to counsel. *Akins*, 259 Mich App at 557.

## III. EVIDENTIARY ERRORS

Defendant raises a number of claims of evidentiary error. We find no errors warranting relief.

We first note that all of the claims of error raised by defendant are unpreserved. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant raised no objections to the majority of the evidentiary errors she now raises on appeal. Defendant did object in one instance, arguing that a witness, Gail Lippert, should not have been permitted to read statements from a medical report prepared by Brenda Wade, the sexual assault nurse examiner (SANE) who examined NB on May 29, 2015,. However, that objection was not made on the presently-asserted ground of hearsay.[1] Therefore, all of defendant's claims of evidentiary error are unpreserved, *id.*, and our review is for plain error affecting substantial rights. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). In order for plain error requiring reversal to occur, "[f]irst, there must be an error; second, the error must be plain (i.e. clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative)." *Id.*

---

[1] Counsel appears to have objected to Wade's testimony on relevancy grounds, arguing that Wade was "rereading" the report and that the report "speaks for itself."

"Moreover, reversal is only warranted when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence." *Id*.

## A. PURPORTED HEARSAY STATEMENTS

Defendant's first argument is that various out-of-court statements made by NB to others, in which she reported that she was burned and cut with a knife by defendant, were inadmissible hearsay. The challenged statements were introduced through the testimony of three witnesses: (1) DeGraw, who testified regarding statements made by NB during his examination of her; (2) Nicole King, a forensic interviewer who interviewed NB about two weeks after Quinn discovered her injuries; and (3) Lippert, who read statements from Wade's report.

## 1. DEGRAW'S TESTIMONY

NB's statements to DeGraw were not hearsay and were admissible as prior consistent statements. MRE 801(d)(1)(B) provides that a statement is not hearsay if it is a prior consistent statement of a testifying witness that is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." To be admissible under this rule,

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation omitted).]

All four elements required to admit prior consistent statements under MRE 801(d)(1)(B) are satisfied in this case. NB testified at trial and was subject to cross-examination. Her statements to DeGraw were consistent with her trial testimony. There was a charge of recent fabrication or improper influence. Indeed, defense counsel's theory of the case was that Quinn had improperly influenced or coached NB to provide trial testimony that implicated defendant. Specifically, defense counsel implied that NB was subject to coaching or influence by Quinn after the date of defendant's preliminary examination and emphasized, during closing argument, that the jury should discredit Quinn's testimony that he had not discussed the incidents of abuse with NB between the time of the preliminary examination and the trial.

Finally, the prior consistent statements were made before the time that the supposed motive to falsify arose. In that regard, we note that the second and fourth elements refer to the same motive, i.e., "the motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *Id*. at 711. Therefore, while a statement must be made before a particular motive to fabricate arose, the fact that there may have existed *a* motive to fabricate at the time of the statement does not prohibit the use of prior consistent statements under MRE 801(d)(1)(B). *Id*. Rather, when several charges of recent fabrication or improper influence are made, it is enough that a prior

consistent statement was made before the most recent of these purported influences. See *id*. at 711-712.

Although some of defense counsel's statements may arguably have implied that Quinn influenced NB from the very outset of the case, the most recent, and most emphasized, charge of improper influence, was that Quinn had influenced or coached NB during the time period between the preliminary examination and the trial. Therefore, prior consistent statements made by NB before the preliminary examination could be admitted under MRE 801(d)(1)(B). *Jones*, 240 Mich App at 707. We find no plain error in the admission of NB's statements to DeGraw, as they were made well before defendant's preliminary examination. *Coy*, 258 Mich App at 12.

## 2. KING'S TESTIMONY

Defendant's argument that King's testimony was inadmissible on hearsay grounds is also meritless, as no out-of-court statements were admitted. Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted. MRE 801(c). A "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). King did not testify to a statement made by NB. Rather, King only testified that the information provided to her by NB was consistent with the child abuse allegations against defendant. Because no out-of-court statements were admitted, there was no error grounded in hearsay. *Id*.

## 3. LIPPERT'S TESTIMONY

Defendant also challenges the admission of statements made by NB to Wade, and statements made by NB to Quinn, who then reported them to Wade. These statements were included in a medical report prepared by Wade after NB's examination. Because Wade was unavailable to testify at trial, Lippert, Wade's supervisor, testified in her place. The parties stipulated to the admission of Wade's report. The prosecution then asked Lippert to read from the report. Defendant objected (albeit not on hearsay grounds) to Lippert's reading of certain statements from the report; however, the trial court overruled the objection because defense counsel had stipulated to the admission of the report.

We conclude that by stipulating to the admission of the report, defendant waived her claim of error. Waiver is the intentional relinquishment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). By stipulating to the admission of Wade's report, without any qualifications (such as striking out portions that were purportedly hearsay), defendant clearly waived any evidentiary issues related to the report. And once the report was admitted into evidence by stipulation, permitting Lippert to read from it did not constitute error. See *People v Hoffmann*, 142 Mich 531, 553; 105 NW 838 (1905). Indeed, Lippert did no more than what any juror could have done after the report was admitted by stipulation: she read its contents.

We further conclude, however, that even if defendant had not waived a hearsay challenge to portions of Wade's report, no relief would be warranted. Because the challenged statements were found within a written report, the evidentiary issue is one of hearsay within hearsay. Where hearsay exists within hearsay, each "level" of hearsay must conform with an exception to the

hearsay rule. MRE 805. Wade's medical report is itself hearsay. See *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003) (explaining that a laboratory report was, "without question, hearsay."). Additionally, the report contains statements made by Quinn—another level of hearsay—concerning statements made by NB.[2] For the reasons that follow, we conclude that no error warranting reversal occurred in the trial court's admission of Lippert's testimony regarding Wade's report.

The report itself is subject to the hearsay exception found in MRE 803(6), which permits the admission of:

> A memorandum, report, record, or data complication, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The medical report generated by Wade meets the requirements of this rule. Lippert explained during her testimony that generating such a report was standard practice, and that Wade had prepared the report in accordance with that practice. While our Supreme Court has indicated that reports generated for litigation purposes generally fail to meet the "trustworthiness" requirement of the rule, see *McDaniel*, 469 Mich at 414, the examination was conducted on the same day that NB's injuries were discovered, and it is therefore clear that the report was not generated for purposes of litigation. Rather, as Lippert explained, the purpose of the examination was to provide treatment and to put a plan in place to ensure NB's safety. In fact, no party even suggests on appeal that the report itself was not admissible under this exception to the hearsay rule.

Along with reporting Quinn's own observations, Wade's report reflects Quinn's recitation of statements made to him by NB on May 29, 2015, which statements were reproduced in Wade's report. We can discern no exception to the hearsay rule applicable to the admission of these statements. However, we find that their admission was harmless and did not affect defendant's substantial rights. *Coy*, 258 Mich App at 12. The particular statements at issue are

---

[2] The report also contains statements made by NB to Wade. Because these statements were consistent with NB's trial testimony and were made before defendant's preliminary examination, they were admissible as prior consistent statements and were not hearsay, as discussed in Part III(A)(1) of this opinion. See MRE 801(d)(1)(B).

Quinn's statements that NB had told him that defendant had struck her in the face with a spatula and had burned her with a cigarette, and (assuming that it constituted a "statement") that NB had "made a hissing sound" while touching her injured arm with a pen. NB testified at trial that defendant had struck her with a spatula, and defendant admitted to this act in her conversations with police. Quinn testified that he had told Wade that NB had been burned by defendant, and that this information had come from NB. In other words, all of the challenged statements contained in Wade's report were duplicative of Quinn's or NB's trial testimony.

We conclude, under these circumstances, that any error in the admission of this limited portion of Wade's report was harmless and did not affect defendant's substantial rights. Our Supreme Court has explained:

> [T]he admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence. This Court has cautioned, though, that "the fact that the statement [is] cumulative, standing alone, does not automatically result in a finding of harmless error. . . . [Instead, the] inquiry into prejudice focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful. This may be even more likely when the hearsay statement was made by a young child, as opposed to an older child or adult. However, if the declarant himself testified at trial, "any likelihood of prejudice was greatly diminished" because "the primary rationale for the exclusion of hearsay is the inability to test the reliability of out-of-court statements[.]" Where the declarant himself testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial. [*People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010) (citations omitted).]

The instant case was not entirely a one-on-one credibility contest between defendant and NB; the case also involved disputed physical evidence and expert testimony, relating to such issues as whether NB's injuries resulted from cigarette burns or bug bites. And statements admitted through the report were cumulative of Quinn's trial testimony and used to corroborate NB's trial testimony. NB testified at trial and was subject to cross-examination. The rationale of *Gursky* thus supports our conclusion that any erroneous admission of hearsay in Wade's report was harmless.

Further, the untainted evidence against defendant was quite significant. Defendant admitted to inflicting serious physical abuse against NB on several occasions, although she would not admit to the charged acts of cutting and burning NB. Defendant told police that she had held a knife within an inch of NB's neck. Defendant initially lied to investigators regarding certain acts of abuse, first denying them, but later admitting that they had occurred. And while defendant attempted to offer an alternate explanation for the burns on NB's body, this explanation had little factual support. In addition, NB was in defendant's primary physical custody for several weeks until May 29, 2015. There was little evidence to suggest that anyone else could have caused the injuries. DeGraw testified that NB's injuries were consistent with the

allegations against defendant. Even without the statements contained within Wade's report, the jury could properly have concluded that defendant had not only committed the acts to which she admitted, but also had taken the additional steps of cutting and burning NB. Under the circumstances, any error was harmless. Accordingly, the plain-error test is not satisfied and defendant is not entitled to relief.

## B. COMMENTARY ON CREDIBILITY

Defendant also argues that the trial court erred by allowing Bishop to comment on the credibility of NB. We agree that Bishop's commentary on NB's credibility was improper; however, reversal again is not warranted.

It has long been the rule of this state that it is "improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

Defense counsel extensively cross-examined Bishop about his interview process and the potential for a child witness to be influenced or coached before or during an interview to produce a particular result. During the prosecution's redirect examination of Bishop, the prosecution asked Bishop whether he would ever begin an investigation of this sort by presuming that any particular allegations were true. Bishop stated that he would not assume that any allegations of abuse were true, and that he would not form any opinion regarding the truth of the allegations until after the child was interviewed and a comparison between the child's statements and other known evidence could be made. Bishop further testified that after making such a comparison in this case, he concluded that NB "was credible." This led to the following exchange between Bishop and the prosecution:

> *Q.* Okay. And based on the totality of your investigation and going through the various steps that we have explored during the course of trial, the statements made by dad as far as what the disclosures were concerning [NB], the SANE exam results and statements made to the SANE nurse, the Care House interview. And your interview of the [d]efendant, did that lead you to the conclusion as far as the allegation?
>
> *A.* Yes.
>
> *Q.* What was that?
>
> *A.* Throughout the whole time [NB]'s statement[s] have been consistent. They have been consistent throughout the whole time from her first interview at Care House, to her testimony at court, her testimony here, and the exam. She has been consistent, and what she stated to her father has been consistent.
>
> And on the other end of the spectrum the events that [NB] described and then I brought those incidents to [defendant]'s attention of the more detailed information, she stated [in] the first interview that none of that ever happened. And then the second interview that some of that did happen.

So the only person that has changed their story in this whole thing has been [defendant].

Bishop's testimony could be read as improper commentary on NB's credibility. However, even assuming that error occurred, reversal is not required. See *Dobek*, 274 Mich App at 70-71 (finding no plain error when a police officer, in response to cross-examination concerning " 'deception' issues," testified that he had no concerns that the victim had lied). In response to defense counsel's cross-examination, Bishop testified regarding the manner of the interview process, ultimately explaining how he had reached the conclusion that the allegations were credible. And because Bishop was a police witness called by the prosecution, the jury could hardly have been surprised to learn that Bishop believed that the victim was telling the truth. See *id*. at 71. Defendant has not established plain error. *Coy*, 258 Mich App at 12.

## IV. PRIOR ACTS OF DOMESTIC VIOLENCE

Defendant also argues that the trial court abused its discretion by admitting evidence of other acts of domestic violence perpetrated by defendant against NB. We disagree. We review for an abuse of discretion a preserved challenge to a trial court's decision to admit or exclude evidence. *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Franklin*, 500 Mich at 100 (quotation omitted).

At trial, police witnesses testified that defendant had admitted to punching NB in the face and stomach, punching NB hard enough that blood blisters had formed on defendant's hand, striking NB in the face with a spatula, and hitting NB with a belt. MCL 768.27b(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403." MRE 403 allows the trial court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant argues that the challenged evidence does not satisfy MRE 403 and is therefore not admissible under MCL 768.27b(1). We note that in the context of MRE 404(b), this Court has stated that where the challenged evidence is a defendant's own statement (i.e., the statements of a party-opponent, which are admissible under MRE 801(d)(2)), "a prior statement does not constitute a prior bad act coming in under MRE 404(b) because it is just that, a prior statement and not a prior bad act." *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989), aff'd 437 Mich 149 (1991), citing *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). We conclude that the same holds true here. What is at issue here is not evidence of a prior act of domestic violence under MCL 768.27b, but rather, a prior statement that could be admitted under MRE 801(d)(2). Therefore, the trial court only had to determine whether "the statement was relevant, and second whether its probative value outweighed its possible prejudicial effect." *Goddard*, 429 Mich at 515, citing MRE 401 and MRE 403.

In any event, whether evidence is considered for admission under MCL 768.27b or MRE 801(d)(2), it is still required to satisfy MRE 403. When applying MRE 403, this Court has explained that "[a]ll relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id*. at 614. Unfair prejudice "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id*. (quotation marks and citations omitted).

The highly relevant nature of the other acts of violence committed by defendant toward NB cannot be seriously disputed. During her interview with police, defendant admitted to punching NB, striking her with a belt "more times than she could count[,]" striking her with a spatula, and beating her with such frequency or force that blisters formed on defendant's hand. Defendant admitted to punching NB in the stomach, intending to inflict pain. She also admitted to threatening NB with a knife, holding it within an inch or two of NB's neck. All of these acts were motivated by defendant's anger at NB for normal childhood misbehavior and occurred while NB was alone with defendant at defendant's home. These other acts of abuse are similar to the charged acts in this case, and demonstrate an ongoing pattern of abuse by defendant, directed toward NB. The introduction of this evidence certainly had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Defendant argues that the prosecution could not show when these other acts had occurred, thus rendering them "completely unreliable." However, because NB was 5 years old when removed from defendant's care, the acts described above obviously occurred, at a minimum, within that five-year time period. Moreover, the conduct described represented an ongoing pattern of abuse, not a single incident. The prosecution's inability to pinpoint the precise date of each act does not render the evidence irrelevant; rather, if anything, it demonstrates that defendant's abuse of NB was perhaps more the norm than the exception.

Defendant also argues that the evidence was unfairly prejudicial because it allowed the jury to view her as a "perpetual child abuser . . . ." Defendant explains that even if the jury did not believe that she had cut NB with a knife or burned her with cigarettes, the jury may nonetheless have convicted her based on these other acts, which were not charged. In this regard, the trial court instructed the jury as follows:

> The prosecutor has introduced evidence of claimed acts of domestic violence by the [d]efendant for which she is not on trial. Before you may consider such alleged acts as evidence against the [d]efendant, you must find that the [d]efendant actually committed such act [sic].
>
> If you find that the [d]efendant did commit those acts, you may consider them in deciding if [d]efendant committed the offense for which she is now on trial.

You must not convict the [d]efendant here solely because you think she is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the [d]efendant committed the alleged crime or you must find her not guilty.

Jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). The trial court's instructions alleviated defendant's concerns. Further, both the prosecution and defense counsel also reminded the jury that the charged acts were the cutting and burning of NB, not the other acts of abuse.

In sum, and in light of the trial court's instructions, the risk of unfair prejudice was minimal when compared to the highly probative value of the evidence of other acts of child abuse committed by defendant. The trial court did not abuse its discretion by allowing this evidence to be admitted at trial. *Franklin*, 500 Mich at 100 (quotation omitted).

## V. PROSECUTORIAL MISCONDUCT

Defendant further raises several claims of prosecutorial misconduct. "In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object below to any of the alleged instances of prosecutorial misconduct. Accordingly, defendant's claims are not preserved.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id*. at 382. "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 382-383. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*. at 382. When a defendant fails to object in the trial court to a purported instance of prosecutorial misconduct, error requiring reversal cannot be found on appeal if "a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (quotation omitted).

Defendant first contends that the prosecution improperly vouched for NB's credibility during closing argument. The prosecution may not vouch for the credibility of a witness by implying or asserting that it has some special knowledge regarding whether the witness has testified truthfully. *Id*. at 476-477. "The danger is that the jury will be persuaded by the implication that the prosecutor has knowledge that the jury does not and decide the case on this basis rather than the evidence presented." *Id*. at 477. But that is not what occurred here. Throughout the trial, the prosecution elicited testimony demonstrating that NB had been consistent when recounting, to all who asked, the abuse that she had suffered. In closing arguments, the prosecution explained that, throughout the investigation, NB's story had "never changed," and thus was credible. "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the

question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).[3]

Defendant also argues that it was improper for the prosecution to seek to bolster NB's credibility by introducing her prior consistent statements. Defendant acknowledges that such a tactic *is* permitted in certain circumstances, such as those found in MRE 801(d)(1)(b). Despite noting the existence of this rule, defendant fails to explain how the prosecution's use of prior consistent statements by NB did not conform to the rule. It is not this Court's duty to craft an argument on defendant's behalf. *Matuszak*, 263 Mich App at 59. In any event, as explained earlier in this opinion, the majority of the statements at issue were properly admitted under MRE 801(d)(1)(B). The prosecution did not commit misconduct by seeking to introduce prior consistent statements made by NB throughout the proceedings. See *Dobek*, 274 Mich App at 76 ("A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence"); *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001) (a prosecution "may argue reasonable inferences from the evidence").

Defendant next argues that the prosecution shifted the burden of proof to defendant by asking her if she could produce documents or photographs supporting her claim that the small, round wounds on NB's body were from bed bug bites rather than cigarette burns. We disagree. It is true that the prosecution must not imply "that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). "Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464. Here, however, the prosecution did not attempt to shift the burden of proof. On cross-examination, the prosecution questioned defendant regarding the circular wounds on NB's arms. Defendant asserted that these wounds were from bed bug bites, and claimed to have documents and photographs supporting her claim. The prosecution asked defendant to produce those records, and defendant could not. The prosecution did not put the burden on defendant to present evidence; rather, the prosecution simply inquired about the basis for defendant's contention. "Attacking the credibility of the theory advanced by [defendant] did not shift the burden of proof." *Id*. at 464-465.

---

[3] On a related topic, defendant argues that the prosecution argued facts not in evidence when it stated that NB's trial testimony was consistent with her preliminary examination testimony. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). While it is true that NB's preliminary examination testimony was not admitted at trial, Bishop did testify that NB had given a consistent version of events "throughout the whole time from her first interview at Care House, to her testimony at court, her testimony here, and the exam." It is at least arguable that Bishop was referring to the preliminary examination, although he could also have been referring to a medical examination. In any event, and when examined in context, we find little if any prejudicial effect resulting from the prosecution's reference to the preliminary examination. *Brown*, 294 Mich App at 382.

Further, the trial court properly instructed the jury that defendant was presumed innocent, that the burden of proof was on the prosecution, and that defendant was "not required to prove her innocence or to do anything." The trial court also instructed the jury that the prosecution's statements, arguments, and questions were not evidence. These instructions are presumed to have alleviated any possible prejudice arising from the prosecution's questioning of defendant. See *Fyda*, 288 Mich App at 465.

Defendant also contends that the prosecution improperly denigrated defense counsel during the exchange regarding whether defendant could produce records supporting her claim that NB had suffered bed bug bites. Again, we disagree. The prosecution is generally given great latitude in presenting and arguing a case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). However, this latitude does not extend to suggesting that a defense attorney is intentionally misleading a jury or otherwise questioning the veracity of defense counsel. *Id*. Such arguments undermine the presumption of innocence, and also shifts the focus from the evidence presented at trial to the personality of the defendant's attorney. *Id*.

The prosecution did not denigrate defense counsel. After defendant asserted that she had given documents supporting her bed bug theory to her attorney, the prosecution asked defense counsel whether he had the records, and also asked why the prosecution had not received these records. While these questions might more appropriately have been asked and answered outside of the jury's presence, we cannot conclude that the brief exchange undermined the presumption of innocence afforded to defendant, or that it shifted the focus to defense counsel's personality rather than the evidence presented. Rather, the prosecution's questions continued to place the focus on the lack of documentation supporting defendant's assertions. Again, the prosecution was entitled to attack the credibility of defendant's theory. *Fyda*, 288 Mich App at 464-465. The prosecution's commentary did not deny defendant a fair trial, and therefore does not warrant relief.[4]

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that trial counsel was ineffective for stipulating to the admission of Wade's report, for failing to object to the testimony of King, DeGraw, and Bishop, and for failing to object to the alleged prosecutorial misconduct. We disagree. To preserve a claim that counsel was ineffective, a defendant must move for a new trial or a *Ginther*[5] hearing in the trial court. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Defendant did not file any such motion below; our review is therefore limited to errors apparent on the record. *People*

---

[4] Defendant also argues that by asking defense counsel about the records, the prosecution infringed on the attorney-client privilege. The attorney-client privilege applies to communications between the attorney and client. *People v Waclawski*, 286 Mich App 634, 693; 780 NW2d 321 (2009). The prosecution did not inquire into any communications between counsel and client; rather, the prosecution asked defense counsel if he possessed the documents to which defendant had just testified in open court; the privilege was not implicated.

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

*v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001). Claims of ineffective assistance of counsel present mixed questions of fact and constitutional law. *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016). Any factual findings by the trial court are reviewed for clear error, while the ultimate legal issue is reviewed de novo. *Id*. at 671-672. Clear error exists if "this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

Under the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel plays a crucial role in the Sixth Amendment's guarantee of a fair trial by ensuring that the defendant has access to the "skill and knowledge" necessary to respond to the charges against him or her. *Strickland v Washington*, 466 US 668, 685; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The right to counsel also encompasses the right to the effective assistance of counsel." *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). See also *Strickland*, 466 US at 686.

Under *Strickland*, 466 US at 687, reversal of a conviction is required when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the errors prejudiced the defendant. Accordingly, a defendant requesting reversal of an otherwise valid conviction bears the burden of proving that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." [*People v* ]*Sabin*[ *(On Second Remand)*], 242 Mich App [656,] 659[; 620 NW2d 19 (2000)].

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Moreover, counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660. [*People v Foster*, 319 Mich App 365, 390-391; 901 NW2d 127 (2017) (footnote omitted).]

As stated, no hearsay error occurred with respect to the admission of testimony by King and DeGraw. Therefore, counsel was not ineffective for failing to object. *Foster*, 319 Mich at 391 ("[C]ounsel is not ineffective for failing to make a futile motion."). With regard to Wade's report, we cannot say that counsel's stipulation was objectively reasonable or the product of sound trial strategy in light of the fact that counsel apparently did not want portions of that report to be read to the jury. But even assuming that defense counsel's stipulation fell below an objective standard of reasonableness, defendant cannot demonstrate prejudice. Ultimately, NB's statements contained within the report were admissible, and the admission of statements by Quinn found in the report, even if not properly admitted, caused no prejudice to defendant. *Id*. Similarly, even if portions of Bishop's redirect testimony were improperly admitted, and even if

they might have been stricken had an objection been raised, the error was not prejudicial for the reasons previously explained. *Id*.

Defendant also contends that defense counsel was ineffective for failing to object to each of the purported instances of prosecutorial misconduct discussed above. But counsel is not ineffective for failing to raise meritless or futile objections. *Foster*, 319 Mich App at 142. Because no instances of misconduct occurred, defense counsel was not ineffective.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel